UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-8455-BER

UNITED STATES OF AMERICA

v.

DILLON RENEE POLANCO,

                Defendant.
_____/

CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?  ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  ___ Yes  ✓ No

                Respectfully submitted,

                MARKENZY LAPOINTE
                UNITED STATES ATTORNEY

BY: *Adam C. McMichael*
                _____
                ADAM McMICHAEL
                ASSISTANT UNITED STATES ATTORNEY
                Florida Bar No.    0772321
                500 South Australian Avenue, Suite 400
                West Palm Beach, Florida 33401
                Tel:        (561) 820-8711
                Fax:       (561) 820-8777
                Email:    Adam.McMichael@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 23-8455-BER |
| DILLON RENEE POLANCO, | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

FILED BY ___TM___ D.C.

Sep 8, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __December 2020 - January 2021__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Conspriacy to commit Hobbs Act Robbery and Hobbs Act Robbery |
| 18 U.S.C. § 924(c)(1)(B)(i) | Use of a semi-automatic assualt rifle during a crime of violence |
| 18 U.S.C. § 371 | Conspriacy to transport stolen property in interstate commerce |
| 18 U.S.C. § 2341 | Interstate transportation of stolen property |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

RICHARD SILVA (Affiliate)

Digitally signed by RICHARD SILVA (Affiliate)
Date: 2023.09.08 08:04:45 -04'00'

*Complainant's signature*

Richard Silva, Task Force Officer - ATF
*Printed name and title*

Sworn to and attested to me by Affiant by
Telephone (Facetime) per Fed. R. Crim. P.4(d) and 4.1

Date: September 8, 2023

*Judge's signature*

City and state: West Palm Beach, FL    Honorable Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, Richard Silva, being first duly sworn, do hereby depose and state as follows:

### Introduction

1. Your affiant is a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have served in that capacity since January 2011. I am also a duly sworn Deputy Sheriff in and for Palm Beach County, Florida. I am also cross designated as a Special Deputy United States Marshal. As a Task Force Officer, I am authorized to conduct investigations and make arrests pertaining to violations of federal law, including violations of Title 18 of the United States Code.

2. This Affidavit is submitted in support of a criminal complaint and the arrest of **Dillon Renee Polanco** (hereinafter "**POLANCO**") and Geovanni Gabriel Vazquez (hereinafter "VAZQUEZ"). I submit there is probable cause, based upon the facts contained within this Affidavit, that POLANCO committed the following federal offenses: Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery, both in violation of Title 18, United States Code, Section 1951(a); Use of a Semi-Automatic Assault Rifle During a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(B)(i); Conspiracy to Transport Stolen Property in Interstate Commerce, in violation of Title 18, United States Code, Section 371, and Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314. I further submit there is probable cause, based upon the facts contained within this Affidavit, that VAZQUEZ committed the following federal offenses; Conspiracy, in violation of Title 18, United States Code, Section 371, and Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314.

3. The facts contained in this Affidavit come from my own investigation, training, and experience, as well as information obtained during the investigation through search warrants, public records, Grand Jury subpoenas returns, reports, visual evidence, and information obtained from other members of local, state, and federal law enforcement, witnesses, and the victims. Because this affidavit is submitted for the limited purpose of obtaining a criminal complaint, it does not contain all the facts known to me about the investigation, but rather, those facts that I submit establish probable cause of the offenses listed above.

## Probable Cause

### I. The Robbery

4. On December 14, 2020, a drug dealer (Victim #1) and his friend (Victim #2) were robbed at gunpoint, kidnapped, and assaulted in Palm Beach County, Florida, and within the Southern District of Florida. The offenses were committed by three assailants, all known to Victim #1, and identified herein by their nicknames "Debo," "Mojo," and "Loso." The assailants used loaded firearms, including two semi-automatic handguns and an AR-15 variant semi-automatic assault weapon with a drum magazine. The assailants also used a taser. The purpose of the attack was to steal Victim #1's drug proceeds, which valued approximately $70,000, and which Victim #1 maintained in a safe at his grandmother's house. The following paragraphs detail the events that occurred during the robbery, kidnapping, and theft of the drug proceeds.

5. At approximately 7:22 am, on December 14, 2020, Victim #1 and Victim #2 were found along the side of a residential roadway, in a vehicle. The vehicle was Victim #1's black Dodge Challenger. Their hands and feet were bound by zip ties and tape. A passerby observed Victim #2 crawl out of the trunk and provided assistance. The citizen helped cut their restraints and called 911.

6. PBSO responded to the 911 call and began the initial investigation. Victim #1 and Victim #2 provided recorded statements at the scene. They advised that they had been kidnapped earlier that morning by three individuals. Victim #1 knew all three men and identified them by their nicknames, "Debo," "Mojo," and "Loso." The victims also identified the house where they were initially assaulted and kidnapped. The house was an Airbnb located at 5030 Royal Palm Beach Boulevard, West Palm Beach, Florida.

7. According to Victim #1, Debo contacted him through Instagram, a social networking platform. Debo informed Victim #1 that he and others were in Florida and that they should meet. Victim #1 was well acquainted with Debo and agreed. Victim #1, along with Victim # 2 who happened to be with Victim #1 by coincidence, drove to the Airbnb residence in Victim #1's Dodge Challenger. Once they arrived, the victims were met by Debo and Mojo outside. Once inside, Victim #1 smoked marijuana with Debo and Mojo and they all remained in the living room area for a while. At some point, Debo left the living room area and returned shortly thereafter with a firearm. Mojo also produced a firearm, while Loso came out from hiding with an AR-15.

8. All three assailants ordered Victim #1 and Victim #2 to get on the ground. Victim #1 explained that he was tasered multiple times. Victim #2 reported that he was tasered and threated at gunpoint. Once the assailants gained control of the victims, they used tape and zip ties to retrain each victim.

9. Victim #1 and Victim #2 were subsequently forced into Victim #1's Dodge Challenger. Victim # 1 was placed in the back passenger seat and Victim #2 was put inside the trunk. Victim #1 explained that his vehicle was driven by Debo and that Loso was a passenger. Victim #1 later observed a second vehicle that was driven by Mojo that followed.

10. The assailants transported Victim #1 and Victim #2 from the AirBnB to Victim #1's grandmother's house in Belle Glade, Florida. Debo, armed with a handgun, knocked on the front door of the residence to gain entry. The grandmother (Victim #3) opened the door and Debo forced his way inside. Loso, who was armed with the semiautomatic assault pistol, was also present and went inside Victim #3's residence. Victim #1 was brought inside by Debo and Loso. Victim #1 was still retrained and placed lying face down on the floor.

11. Victim #1's mother (Victim #4) was also inside the residence and reported hearing men talking about her son and demanding to know where something was. Victim #4 stated that she saw two men wearing masks and armed with firearms. Ultimately, Victim #3 and Victim #4 were seated next to each other in the living room. At some point, Victim #1 broke free of his restraints and fought with Debo and Loso. Victim #1 then ran out of the residence to yell for help. Victim #2, who was never removed from the trunk, overheard Victim #1 yelling. Victim #2 also heard the assailants beating Victim #1. According to Victim #1, he was struck numerous times by the assailants, including being pistol whipped and hit in the eye by the assault rifle. Victim #1 explained that he continued to fight with Debo and Loso outside his grandmother's house until he was choked to unconsciousness.

12. Victim #3 and Victim #4 reported that the assailants located a black safe inside the residence. Victim #3 and Victim #4 stated that the subjects took the safe and left along with Victim #1 in the same vehicles they arrived in. Victim #3 recalled that they headed east. Victim #1 recalled that he regained consciousness while in back of his vehicle as they headed back towards Royal Palm Beach, Florida.

13. Victim #1 reported that once they returned to Royal Palm Beach, Florida, Debo parked the Dodge Challenger along the side of the road and the other car pulled alongside.

Victim #1 noticed that his safe was inside the second car and was visible when Debo and Loso got inside. Victim #1 provided a partial license plate number of the second car, which was a red Honda Accord. Thereafter, Victim #2 opened the trunk of the Dodge Challenger and escaped. It should be noted that the location where Victim #1 and Victim #2 were found by the passerby was within a few blocks of the Airbnb where the kidnapping occurred.

14. Victim #1 reported that the safe stolen from his grandmother's house contained approximately $70,000 in United States currency. Victim #1 also confirmed during a later meet with the United States Attorney's Office that the money was drug proceeds. Victim #1 further identified POLANCO, whom he referred to as "Dee," as a drug source.

15. After the robbery occurred, investigation determined that all three assailants went to a Motel 6 hotel in Dania Beach, Florida, in order to open the safe. Through the issuance of a state search warrant for Loso's Instagram account, under the name "ggorillachildloso," your affiant located video and photo evidence confirming all three assailants had accessed the safe and retrieved the money inside. In a file saved as "archived_stories_17898555376633735," dated December 14, 2020, 21:16:53 UTC, and your affiant observed a video that depicted Debo making a recording inside the hotel room. Your affiant observed Mojo, Debo, and Loso in the video. Additionally, the video showed Loso holding multiple stacks of United States currency with red and blue money bands. Other stacks of United States currency were also visible and lying on the floor. Your affiant further observed the subjects in possession of a Palmetto State Armory, PA-15, assault weapon with a high-capacity drum magazine and a black handgun. Lastly, your affiant noted in the video that the subjects had a black metal safe on the floor and a DeWalt reciprocating saw.

16. On December 16, 2020, Debo and Mojo were arrested at a Travelodge Hotel located in Richmond Hill, George. Their arrest was conducted by the United States Marshals based upon state arrest warrants issued in Palm Beach County, Florida. Debo and Mojo were also in possession of a Mitsubishi Outlander with Florida license plate number GWBV85. The vehicle was impounded by the Chatham County Sheriff's Office and a search warrant was obtained for the vehicle. On December 17, 2020, law enforcement executed the warrant and recovered the following items of evidence; five kitchen knives, a plastic bag from Shoot Straight Gun Range, a self-defense taser, three ski masks (1-red,1-black,1green), a roll of tape and roll of plastic wrap, Victim #2's Florida driver's license, and Three Apple iPhones. At that time, law enforcement did not recover any money or firearms from the subjects or the vehicle.

17. Debo and Mojo were extradited to Palm Beach County to face state charges related to the robbery and kidnapping. Initially, they were housed in custody in the Palm Beach County Jail; however, the Palm Beach County State Attorney's Office filed a "no file" of all charges on January 21, 2021, and both men were released from jail without any restrictions.

**II.   The Conspiracy**

18. An Indictment was returned by a Grand Jury sitting in the Southern District of Florida on April 7, 2022, which charged Debo, Mojo, and Loso with numerous federal offenses related to the events that occurred on December 14, 2020 (22-CR-80053-WPD). In November 2022, and again in February 2023, your affiant met with a cooperating defendant (hereinafter "CD") who agreed to cooperate with the United States. The CD accepted responsibility in organizing and executing the offenses and is cooperating with the United States in hopes of receiving a future reduction of his sentence.

19.     The CD explained that the robbery was planned by the CD, Mojo, and POLANCO, a/k/a "Dee." The CD also explained that he and POLANCO had distributed marijuana to Victim #1 in the past and that they had a relationship based in part upon their drug dealings. The CD explained that in mid-2020, the CD, POLANCO, and VAZQUEZ met with Victim #1 in Palm Beach County to sell Victim #1 approximately twenty pounds of marijuana. The CD recalled driving a white SUV from Columbus, Ohio, to Florida. During that trip in mid-2020, the CD, POLANCO, and VAZQUEZ met with Victim #1 in his apartment in West Palm Beach, Florida. They all then traveled to Victim #1's grandmother's (Victim #3) home in Belle Glade, Florida. As they were inside the grandmother's residence, the CD, POLANCO, and VAZQUEZ all witnessed Victim #1 handling a black safe containing a large amount of United States currency. The CD said that during their time in Florida in mid-2020, he and POLANCO noted the addresses and directions to each location.

20.     During the investigation, your affiant located an open public Instagram webpage for Victim #1. Posted on that page was an image that depicted Victim #1 and POLANCO posing in the front of a white SUV as they both held large stacks of U.S. currency. The image was dated August 5, 2020, and corroborated the information provided by the CD concerning their trip in mid-2020 to South Florida.

21.     According to the CD, shortly after the trip to Florida, POLANCO and the CD distributed a kilogram of cocaine to Victim #1. The CD explained that he and POLANCO both knew the kilogram of cocaine was of poor quality, which ultimately led to a dispute between POLANCO and Victim #1. POLANCO told the CD that he was not interested in swapping out the narcotics to satisfy Victim #1. Rather, the CD and POLANCO decided to rob Victim #1.

7

22.     The CD explained that he met with POLANCO and Mojo in Ohio to plan the armed robbery of Victim #1. The CD said that the plan included POLANCO as one of the assailants. The CD also explained that POLANCO gave the CD approximately $10,000 in United States currency to fund all expenses relating to the robbery, including paying for the Airbnb, food, gas, and firearms.

23.     Investigation determined that on December 9, 2020, the CD and Mojo flew on Spirit Airlines from Cleveland, Ohio to Fort Lauderdale, Florida.  The CD also explained that POLANCO was to follow on a separate flight to Florida, Ultimately, POLANCO changed the plans and did not travel to Florida. Instead, the CD explained that he and POLANCO then recruited Loso to take POLANCO's place as an assailant. Further investigation revealed that Loso flew from Oakland, California to Miami, Florida on December 10, 2020, aboard Southwest Airlines.

24.     The CD advised that on December 14, 2020, Victim #1 brought the kilogram of cocaine to the Airbnb. The CD explained that the kilogram appeared to be packaged differently and in the shape of a football. The CD also explained that he (the CD) did not expected Victim #1 to be accompanied by another person, so they revised their plan. As Victims #1 and #2 were in the living room watching TV, the CD went into a bedroom and contacted POLANCO to discuss the status of the planned robbery. During this call the CD also informed POLANCO about the cocaine's appearance and that he (the CD) did not believe it was the same kilogram of cocaine that was given to Victim #1. Thereafter, POLANCO directed the CD to proceed with the robbery. The CD then exited the bedroom, and he and Mojo initiated the armed robbery as Loso entered the home armed with the AR-15.

25.  The CD also explained that the stolen drug proceeds and firearms were all hidden inside the Mitsubishi rental car. The CD specified that he hid the items inside the door panel and that police in Georgia never found them. The CD advised that after he was released from the Palm Beach County Jail, he returned to Oregon. Once there, the CD and POLANCO conspired to retrieve the money and firearms from the car. The CD explained and identified two other individuals, one of which was VAZQUEZ, who travelled to Georgia and retrieved the items from the Mitsubishi rental car. VAZQUEZ then brought the items back to Oregon for POLANCO.

III.  **Interstate Transportation of Stolen Drug Proceeds**

26.  In March 2023, your affiant met with a confidential source (hereinafter "CS-1"), who provided a sworn recorded statement pursuant to a limited use immunity agreement ("proffer letter") with the government. CS-1 was informed that he was a subject of the investigation, and his cooperation was provided in hopes of mitigating his criminal liability and reducing any future sentence.

27.  During CS-1's proffer, he admitted to knowing both POLANCO and VAZQUEZ by their street names "Dee" and "Geo" respectively. CS-1 was presented with separate photo lineups of both subjects and positively identified each defendant. CS1 stated that VAZQUEZ introduced him to POLANCO as a marijuana source of supply. CS-1 also explained that POLANCO hired CS-1 as a marijuana runner and that CS-1 transported marijuana for POLANCO from Oregon to Columbus, Ohio, on several occasions.

28.  CS-1 recalled meeting with POLANCO, VAZQUEZ, and the CD in or around January 2021 to discuss a plan to recover the concealed items in Georgia. The CD also stated that POLANCO recruited CS-1 and VAZQUEZ to travel to Savannah, Georgia, to recover the stolen money and firearms. CS-1 advised that on or about January 28, 2021, he and VAZQUEZ flew to

Savannah, Georgia, from Portland, Oregon. Once they arrived, CS-1 and VAZQUEZ met with Avis's car rental personnel at the Savannah airport. CS-1 informed an Avis employee that he had recently rented a black Mitsubishi and had left his property in the vehicle. After Avis car rental confirmed that CS-1 recently rented the vehicle, they permitted VAZQUEZ and CS-1 to enter the car lot. They located the vehicle and removed the front passenger side door panel using a screwdriver VAZQUEZ borrowed from an Avis employee. They then recovered the cash, firearms, and ammunition from the vehicle and placed them in multiple duffle bags.

29. According to CS-1, VAZQUEZ and CS-1 went back to a hotel room where they counted out $70,000 in United States currency. As they were counting out the money, VAZQUEZ communicated with POLANCO and the CD via Facetime video call so they could verify the items that were recovered. The following day, CS-1 rented a vehicle using his identity and they transferred the money, firearms, and ammunition into the new rental car. CS-1 accompanied VAZQUEZ as they drove to Columbus, Ohio.  Once they arrived in Ohio, CS-1 flew back to Oregon while VAZQUEZ drove the rental car back to Corvallis, Oregon. CS-1 admitted that he and VAZQUEZ used their identities and credit cards to book hotel rooms at the Country Inn & Suites hotel in Savannah, Georgia.

30. Your affiant corroborated CS-1's statement by reviewing flight records belonging to both CS-1 and VAZQUEZ. According to Delta travel records, on January 28, 2021, CS-1 and VAZQUEZ flew from Portland, Oregon to Atlanta, Georgia. Once in Atlanta, both CS-1 and VAZQUEZ boarded a connecting flight from Atlanta to Savannah, Georgia. Additionally, your affiant obtained records from American Airlines which confirmed CS-1 returned to Oregon on February 1, 2021, after departing Columbus, Ohio.

31. Your affiant also confirmed that CS-1 and VAZQUEZ used their personal information and credit cards to rent a hotel room at the Country Inn & Suites in Savannah, Georgia on January 28, 2021, through January 29, 2021.

32. Additionally, your affiant obtained records from Enterprise car rental which confirmed that CS-1 rented a 2021 Toyota 4-Runner on January 29, 2021, from an Enterprise car rental location in Savannah, Georgia. The Toyota 4-Runner was returned on February 8, 2021, to another Enterprise car rental location in Corvallis, Oregon. According to the records obtained from Enterprise, a total of 5,258 miles were driven on the vehicle during the 10-day rental period.

33. In furtherance of this investigation, your affiant conducted a records check of the 2020 black Mitsubishi Outlander. This was the same vehicle that CS-1 and VAZQUEZ removed the money and firearms from in January 2020. The search revealed that on April 6, 2021, the Schaumburg Police Department was dispatched to a Mitsubishi car dealership in Schaumburg, Illinois, in reference to found property. According to the service manager at Mitsubishi, the black 2020 Mitsubishi Outlander was dropped off for service due to the front passenger side window not rolling down. The service technicians unscrewed the door panel to repair the front passenger side window and located a 60-round polymer drum magazine and .223 ammunition concealed inside the front passenger side door panel. Officers contacted the owner of the Mitsubishi Outlander, who explained that she purchased the vehicle on or about March 24, 2021, and later that evening, she noticed that the front passenger side window would not roll down. The new owner then brought the vehicle to Schaumburg Mitsubishi to be serviced, at which time the items were located and the police were notified.

34.     On August 21, 2023, while conducting further investigation, your affiant discovered that on February 4, 2021, the El Reno Police Department in El Reno, Oklahoma conducted a traffic stop of the Toyota 4-Runner that had been rented by CS-1. VAZQUEZ was the driver of the Toyota 4-Runner and the sole occupant. He was issued a warning and released.

**IV.     Jail Calls**

35.     In July 2023, Mojo appeared for his initial appearance in the Southern District of Florida. Mojo was initially housed again in the Palm Beach County Jail and his jail calls were monitored and recorded. Your affiant monitored a recorded jail call that occurred on July 28, 2023, at 2:55 pm, between MOJO and POLANCO. During the call, Mojo informed POLANCO of his recent federal court appearance in Palm Beach County and the federal violations he was charged with. Mojo told POLANCO "So, uhm, they, they know shit that they aint supposed to know though, like what only we knew. I'm waiting on the discovery bro. Like, it's crazy. I don't know what happened. I don't know what's going on . . ." POLANCO asked, "Who knows shit, them people?" To which Mojo responded, "Yeah, . . . they know shit that they not even supposed to even know for real. I don't know even know how they know that and that's weird cause aint no way. But I aint got the discovery yet, you feel me. So, I'm waiting on that, I go back to court on Wednesday so… I went back-to-back this week. Uhm…tell, tell, sister, tell sister's brother (referring VAZQUEZ). To uh… I don't know if he got the same number, or what you feel me. Tell sister brother., tell bruh like, and I don't know if he's still in contact with ugh, that ni@gga, that weird n@gga that likes to swallow bananas and shit (referring to CS-1), but tell them n@gga's stay dangerous though. You feel me." POLANCO asked, "Ohh…okay. You said, you ain't got the paperwork yet, so you don't know even know if he on there?" Mojo told POLANCO, "Man, I know my lawyer said some shit, that I was like, and it was like, we couldn't

really talk about it, he was like, tapping on some shit like, that, that's crazy, and this motherfucker is dangerous right here so, you know what I'm saying. I'm talking to you in English, you feel me." POLANCO once again asked LAMAR "the banana swallower is for sure was on there? LAMAR replied, "I didn't say he was on there; I said my lawyer told me some shit that only we know."

## Conclusion

36. I submit that there is probable cause to believe **Dillon Renee POLANCO** committed the following federal offenses: Conspiracy to Commit Hobbs Act Robbery and Hobbs Act Robbery, both in violation of Title 18, United States Code, Section 1951(a); Use of a Semi-Automatic Assault Rifle During a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(B)(i); Conspiracy to Transport Stolen Property in Interstate Commerce, in violation of Title 18, United States Code, Section 371, and Interstate Transportation of Stolen Property, in violation of Title 18, United States Code, Section 2314.

FURTHER YOUR AFFIANT SAITH NAUGHT.

RICHARD SILVA (Affiliate)
Digitally signed by RICHARD SILVA (Affiliate)
Date: 2023.09.08 08:05:32 -04'00'

Richard Silva,
Task Force Officer, ATF

Sworn to and attested to me by Affiant on this 8th day of September 2023, by Telephone (Facetime) per Fed. R. Crim. P.4(d) and 4.1

HON. BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

CASE NO.  22-8455-BER

**Defendant's Name: <u>Dillon Renee Polanco</u>**

| COUNT | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
|  | Conspiracy and Hobbs Act Robbery | 18 U.S.C. § 1951(a) | 20 years in prison<br>$250,000 fine<br>3 years' supervised release<br>$100 special assessment |
|  | Use of a Semiautomatic Assault Rifle in furtherance of a crime of violence. | 18 U.S.C. §§ 924(c)(1)(A)(ii) & (B)(i) | 10 years to life in prison, to be served consecutive to any other sentence of imprisonment<br>$25000,000 fine<br>5 years' supervised release<br>$100 special assessment |
|  | Conspiracy to Transport Stolen Property in Interstate Commerce | 18 U.S.C. § 371 | 5 years in prison<br>$250,000 fine<br>3 years' supervised release<br>$100 special assessment |
|  | Interstate Transportation of Stolen Property | 18 U.S.C. § 2314 | 10 years in prison<br>$250,000 fine<br>3 years' supervised release<br>$100 special assessment |